UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

Juan Francisco Lopez,

                    Petitioner,

          v.                                                          19-cv-1232 (JLS)

William Barr, Acting Attorney General,
Jeffrey J. Searls, Facility Director,
Buffalo Federal Detention Facility,

                    Respondents.

_____

## DECISION AND ORDER

Juan Francisco Lopez is a native and citizen of El Salvador.  He has been

detained at the Buffalo Federal Detention Facility pending removal proceedings

since January 2019.  He petitions this Court, *pro se*, for a writ of habeas corpus

pursuant to 28 U.S.C. § 2241.

Lopez, who is being detained under 8 U.S.C. § 1226(a), argues that his June

2019 bond hearing failed to comport with procedural due process and that his

ongoing detention violates substantive due process.  Lopez asks the Court to direct

the Immigration Judge to conduct a new bond hearing—one where the government

would bear the burden of persuading the Immigration Court that Lopez is not a

flight risk and that his release on bond would not endanger the community.  If the

government cannot meet this burden by clear and convincing evidence, Lopez asks

that he be released.  He also requests a hearing before this Court to address whether his continued detention violates the Fifth Amendment.

For the reasons that follow, the relief requested in Lopez's petition for a writ of habeas corpus is denied, and his petition is dismissed without prejudice.

## BACKGROUND

It is unclear when and where Lopez entered the United States, but he did so without inspection.  Dkt. 4-1, at 2 ¶ 5; Dkt. 4-2, at 4.  By Lopez's account, it was at some point in December 2000, after which he was enrolled in the Department of Homeland Security's ("DHS") Temporary Protected Status program until 2012. Dkt. 1, at 3 ¶ 15.  The government considers Lopez, who is a native and citizen of El Salvador, a member of the Huntington Criminales Loco Salvatruchas MS-13 Clique. *See* Dkt. 4, at 2 ¶ 3; Dkt. 4-2, at 4; *see also* Dkt. 7, at 2 ("Petitioner submits that he has been labeled a gang member, from El Salvador, belonging to the MS-13 gang, because of his interaction with other individuals from El Salvador.").

On July 31, 2018, Lopez was convicted of attempted coercion and sentenced to 16 to 48 months in prison.  Dkt. 4, at 2 ¶ 4; Dkt. 4-2, at 4.  Lopez appealed his conviction to the Supreme Court of the State of New York Appellate Division, Second Judicial Department, and that appeal remains pending.  Dkt. 1, at 4 ¶ 19; *see also People v. Juan F. Lopez* (2018-10119).  The government states that his conviction related to threats to others to join MS-13, which Lopez contests.  Dkt. 4, at 2 ¶ 4; Dkt. 7, at 2.  DHS issued an arrest warrant for Lopez on November 21,

2018 (Dkt. 4-2, at 5), and later determined that he would be detained in immigration custody pending a final administrative decision in his case (*id*. at 7). Lopez requested that an Immigration Judge review DHS's detention determination. *Id*.

On January 19, 2019, Lopez was served with a Notice to Appear ("NTA"), the charging document used to commence removal proceedings. *Id*. at 8. The NTA charged Lopez as removable as an alien present in the United States without being admitted or paroled, and as an alien who has been convicted of a crime involving moral turpitude or an attempt or conspiracy to commit such a crime. *Id*. at 10. *See also* Immigration and Nationality Act §§ 212(a)(6)(A)(i), 212(a)(2)(A)(i)(I); 8 U.S.C. §§ 1182(a)(2)(A)(i)(I), 1182(a)(6)(A)(i).

The parties present varying accounts of the hearings and adjournments that followed the NTA. By the government's account, Lopez appeared in immigration court on February 26, 2019 and requested additional time to find counsel. Dkt. 4-1, at 3 ¶ 8. Lopez then appeared in immigration court on April 2 or 3, 2019, where he again requested time to obtain counsel. *Id*. at 3 ¶¶ 8, 9; Dkt. 4-2, at 12-13. According to the government, Lopez was advised that the hearing would proceed on April 10, 2019 "without exception." Dkt. 4-1, at 3 ¶ 9. At the April 10 hearing, Lopez appeared without an attorney, admitted the allegations in the NTA, and denied his criminal conviction by noting its appeal. He asked the Immigration Judge to allow him to file an Application for Cancellation of Removal. *Id*. at 3 ¶ 10. The Immigration Judge granted the request and, to allow Lopez to file his

application, rescheduled the removal and bond hearings to June 7, 2019.  *Id.*; Dkt. 4-2, at 15.

When Lopez appeared for his bond hearing on June 7, the Immigration Judge found both that he was a danger to the community and that he presented a flight risk.  As such, the Immigration Judge denied him bond.  Dkt. 4-1, at 3 ¶ 11; Dkt. 4-2, 17-18.  Ten days later, Lopez appealed the bond order to the Board of Immigration Appeals ("BIA").  Dkt. 4-2, at 19; *see also* Dkt. 4, at 3 ¶ 14.  Based on the record, it appears that appeal has not been decided.

The removal hearing was adjourned until July 24, 2019 because Lopez provided DHS with his Application for Cancellation of Removal at the June 7 hearing instead of serving it in advance.  Dkt. 4-1, at 3-4 ¶ 11.  Lopez's removal hearing was again rescheduled on July 22 and August 14 by the Executive Office for Immigration Review ("EOIR").  *Id.* at 4 ¶¶ 13-14; Dkt. 4-2, at 20.  The removal hearing proceeded on September 4, where Lopez testified and was cross-examined. The Immigration Judge continued the hearing to November 25 for summary arguments.  Dkt. 4-1, at 4 ¶ 15.

Lopez appears to agree with this timeline.  But he states that the government mischaracterizes "the cause of [his] prolonged detention."  Dkt. 7, at 12.  Lopez emphasizes that the EOIR rescheduled the removal hearing twice, which he neither requested nor sought.  *Id.*  He states, however, that he "sought continuances in order to find Counsel" and that he "mistakenly submitted the Cancellation Application to the DHS" at the June 7 hearing.  *Id.* at 11-12.

Lopez is detained in the Buffalo Federal Detention Facility.  *Id.* at 4 ¶ 17.  He filed the instant petition on September 12, 2019.  Dkt. 1.  The government answered in opposition on November 13, 2019.  Dkts. 4, 5.  Lopez replied on November 21, 2019.  Dkt. 7.  Because he is proceeding *pro se*, the Court holds his submissions "to less stringent standards than formal pleadings drafted by lawyers."  *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

## STATUTORY BASIS FOR LOPEZ'S DETENTION

Lopez is detained under 8 U.S.C. § 1226(a), which allows the government to detain an alien "pending a decision on whether the alien is to be removed from the United States."  The government may release an alien either on "bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General" or on "conditional parole."  8 U.S.C. § 1226(a)(2).[1]

Detention under Section 1226(a) requires an initial custody determination by an Immigration and Customs Enforcement ("ICE") officer.  Pending a removal decision, certain aliens who "demonstrate to the satisfaction of the officer" that they are likely to appear for future proceedings, and that their release would not endanger property or persons, may be released.  8 C.F.R. § 236.1(c)(8).  The alien

---

[1] 8 U.S.C. § 1226(c), which governs detention of criminal aliens, does not apply to Lopez.  Lopez appealed his conviction, and it remains pending.  It therefore does not affect his classification as an alien subject to detention under Section 1226(a).  *See Matter of Acosta*, 27 I. & N. Dec. 420, 432 (BIA 2018) (finding that "a conviction does not attain a sufficient degree of finality for immigration purposes until the right to direct appellate review on the merits of the conviction has been exhausted or waived"); *see also* Dkt. 5, at 2-3, n.1.

may seek review of the initial custody determination by an Immigration Judge at a bond hearing.  *See* 8 C.F.R §§ 236.1(d)(1), 1003.19(d), 1236.1(d)(1).  The alien may also appeal to the BIA.  *See* 8 C.F.R. §§ 236.1(d)(3), 1003.19(f), 1236.1(d)(3).

Section 1226(a) does not identify the burden of proof that applies at bond hearings.  BIA precedent, however, provides that "[t]he burden is on the alien to show to the satisfaction of the Immigration Judge that he or she merits release on bond."  *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006).  To prove that release is warranted, the alien must establish "that he or she does not present a danger to persons or property, is not a threat to national security, and does not pose a risk of flight."  *Id.* at 38.

## JURISDICTION

Habeas corpus review is available to persons who are "in custody in violation of the Constitution or laws or treatises of the United States."  28 U.S.C. § 2241(c)(3).  In the immigration context, only circuit courts have jurisdiction over challenges to the legality of final orders of deportation, exclusion, and removal.  *See Gittens v. Menifee*, 428 F.3d 382, 384 (2d Cir. 2005) ("[The REAL ID Act, 119 Stat. 231, § 106(a) (May 11, 2005)] eliminates habeas jurisdiction over final orders of deportation, exclusion, and removal, providing instead for petitions of review . . . , which circuit courts alone can consider.").  District courts, however, can review claims by aliens challenging the constitutionality of their pre-removal detention.  *See Demore v. Kim*, 538 U.S. 510, 516-17 (2003).  The government does not dispute the Court's jurisdiction in this case.  Dkt. 4, at 1 ¶1.

## ANALYSIS

### I.  Lopez did not need to exhaust administrative remedies.

The government argues that Lopez's petition must be denied because his bond appeal remains pending before the BIA.  Dkt. 5, at 8-10.  The Court disagrees. No statute requires an alien to exhaust administrative remedies before challenging detention.  And courts can excuse a failure to exhaust if the case presents a substantial constitutional question.  *See Guitard v. U.S. Sec'y of Navy*, 967 F.2d 737, 741 (2d Cir. 1992); *see also Campoverde v. Doll*, 4:20-CV-00332, 2020 WL 1233577, at *10 (M.D. Pa. Mar. 13, 2020), *appeal filed*, 20-1787 (Apr. 15, 2020) (declining to require exhaustion where an alien's habeas petition raised "constitutional or statutory claims" that the administrative agency "can neither consider nor correct") (citations and quotations omitted).

The Court will not require exhaustion here.  "[Lopez's] petition argues that § 1226(a) and the Constitution require the government to bear the burden of proof during a bond hearing.  Such statutory and constitutional questions cannot be decided by an immigration judge or the BIA, and accordingly [Lopez] was not required to exhaust his administrative remedies before bringing this claim in federal court."  *Id.*

## II.   Due Process

Lopez brings a procedural due process challenge, contesting the burden of proof at his bond hearing, and a substantive due process challenge, contesting his ongoing detention.  Neither challenge has merit.

### a.   Lopez's bond hearing afforded procedural due process.

Consistent with Section 1226(a) and its implementing regulations, Lopez appeared at a bond hearing on June 7, 2019, where the Immigration Judge reviewed ICE's initial custody determination.  The Immigration Judge found that Lopez was a danger to the community and a flight risk, and denied release on bond. Lopez challenges the procedural safeguards that apply to his detention and June 7 bond hearing.  He alleges, and the government does not contest, that the Immigration Judge placed the burden of proof on Lopez at the bond hearing.  Lopez argues that this burden violated his right to procedural due process under the Fifth Amendment.  To remedy this constitutional violation, he argues, the Court must direct the Immigration Judge to conduct a second bond hearing, where the government must bear the burden of establishing, by clear and convincing evidence, that he is neither a flight risk nor a danger to the community.  The Court disagrees.

Courts evaluating a procedural due process challenge undertake a two-step inquiry.  First, the Court considers whether the alien's detention has been unreasonably prolonged.  If not, then there is no procedural due process violation and the analysis ends there.  *See Rasel v. Barr*, 19-CV-458, 2019 WL 4257408, at *3

(W.D.N.Y. Sep. 9, 2019).  If it has been unreasonably prolonged, however, then the Court next considers whether the government has "provided the procedural safeguards required by the Due Process Clause."  *Id*.

Here, "even assuming that [Lopez's] detention is unreasonably prolonged, the government has not violated his procedural due process rights."  *Id.*  Lopez's bond hearing provided him procedural due process.  The government need not bear the burden of proof during Section 1226(a) bond hearings.

As an initial matter, Section 1226(a) does not require it.  *See Jennings v. Rodriguez*, ___ U.S. ___, 138 S. Ct. 830, 847-48 (2018) (rejecting argument that Section 1226(a) requires "bond hearings every six months in which the Attorney General must prove by clear and convincing evidence that the alien's continued detention is necessary" where "[n]othing in § 1226(a)'s text . . . even remotely supports the imposition of either of those requirements").  Moreover, as discussed below, the BIA's precedent of placing the burden of proof on the alien comports with due process.

It bears remembering that, "[i]n the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens."  *Mathews v. Diaz*, 426 U.S. 67, 79-80 (1976).  It is well-settled, for example, that "Congress has the authority to detain aliens suspected of entering the country illegally pending their deportation hearings."  *Reno v. Flores*, 507 U.S. 292, 307 (1993).  Importantly, too, "in enacting the precursor to 8 U.S.C. § 1252(a)," which governs judicial review of orders of removal,

"Congress eliminated any presumption of release pending deportation, committing that determination to the discretion of the Attorney General." *Id.*

Here, the critical question is "what process is due" to Lopez. *See Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). "[N]ot all situations calling for procedural safeguards call for the same kind of procedure." *Id.* Three factors guide the analysis of whether Lopez's bond hearing comported with due process in light of his detention under Section 1226(a): (1) the private interest affected; (2) the risk of an erroneous deprivation of the private interest through the procedures used; and (3) the government's interest at stake. *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)*; see also Nelson v. Colorado*, 137 S. Ct. 1249, 1255 (2017). Balancing these factors against the backdrop of the Supreme Court's "firm[] and repeated[] endorse[ment]" that "Congress may make rules as to aliens that would be unacceptable if applied to citizens," *Demore*, 538 U.S. at 522, the Court concludes that Lopez's June 7 bond hearing afforded him due process.

The first factor weighs heavily in Lopez's favor. Ultimately, he "stands to lose the right 'to stay and live and work in this land of freedom.'" *Landon v. Plasencia*, 459 U.S. 21, 32 (1982) (quoting *Bridges v. Wixon*, 326 U.S. 135, 154 (1945)). Indeed, he has not returned to El Salvador since his entry to the United States in 2000. Dkt. 1, at 4 ¶ 18. Lopez maintains that he "fled[] for his life" when he left El Salvador, and that he may face death if he returns. Dkt. 7, at 14. In addition, Lopez's parents, siblings, and two children, who Lopez says are citizens or legal permanent residents, live in the United States. Lopez therefore stands to lose

"a right that ranks high among the interests of the individual"—the "right to rejoin [his] immediate family." *Landon*, 459 U.S. at 34; *see also* Dkt. 1, at 9 ¶ 47. Lopez's private interest in remaining in the United States is undeniably significant.

The government's interest is also weighty. The government has a clear interest in the control and "efficient administration of the immigration laws at the border." *Landon*, 459 U.S. at 34. "To implement its immigration policy, the Government must be able to decide (1) who may enter the country and (2) who may stay here after entering." *Jennings*, ___ U.S. ___, 138 S. Ct. at 836. In addition, the Supreme Court has reminded courts evaluating whether certain procedures "meet the essential standard of fairness under the Due Process Clause" to "weigh heavily" the fact that "control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature." *Landon*, 459 U.S. at 34. Thus, the Court does not take lightly that "'over no conceivable subject is the legislative power of Congress more complete than it is over' the admission of aliens." *Fiallo v. Bell*, 430 U.S. 787, 792 (1977) (quoting *Oceanic Steam Nav. Co. v. Stranahan*, 214 U.S. 320, 339 (1909)). For these reasons, the Court is persuaded that the government's interests are similarly significant.

The final factor favors the government. The risk that the procedures would erroneously deprive Lopez's interests is low, and is outweighed by the government's interests in detention. To be sure, some risk is inherent in a system that requires incarcerated petitioners who, like Lopez, often proceed *pro se*, to navigate an unfamiliar procedural landscape. And this concern is elevated because of what is at

11

stake: release.  Nevertheless, under BIA precedent, the burden required of Lopez at a bond hearing is not severe.  He must establish "to the satisfaction of the Immigration Judge" that he is neither a flight risk nor danger to the community. *Guerra*, 24 I. & N. Dec. at 38.  The burden is low, comparatively; it is more akin to a preponderance of the evidence standard than a clear and convincing standard. Indeed, the Immigration Judge can consider "any information that is available . . . or that is presented to him or her" by the alien or DHS.  8 C.F.R. § 1003.19(d); *see also Guerra*, 24 I. & N. Dec. at 40 (setting forth "a number of factors" that can guide the Immigration Judge's analysis at a bond hearing).  Moreover, the bond hearing before an Immigration Judge is the second of three levels of review.  It follows the initial determination from an ICE officer.  8 C.F.R. § 236.1(c)(8).  And it precedes the alien's ability to seek review at the BIA.  *See* 8 C.F.R. §§ 236.1(d)(3), 1236.1(d)(3).  Further, an alien who has been denied release on bond can seek a subsequent bond hearing upon a showing that his or her "circumstances have changed materially since the prior bond redetermination."  8 C.F.R. § 1003.19(e). This option provides an additional safeguard.

On balance, the Court concludes that Lopez's bond hearing satisfied the "fundamental requirement" of due process—namely, that he had "the opportunity to be heard at a meaningful time and in a meaningful manner."  *Mathews*, 424 U.S. at 333 (citations and quotations omitted); *see also Borbot v. Warden Hudson Cty. Corr. Facility*, 906 F.3d 274, 278-79 (3d Cir. 2018) (affirming dismissal where the petitioner, detained under Section 1226(a), "was granted meaningful process prior

to filing his habeas petition," including at a bond hearing where he bore the burden of proof); *Rasel*, 2019 WL 4257408 at *6 (finding that a Section 1226(a) bond hearing that places the burden on the petitioner is not a "facially invalid process"); *Hylton v. Shanahan*, No. 15-CV-1243-LTS, 2015 WL 3604328, at *7 (S.D.N.Y. June 9, 2015) (denying petition and stating that "[u]nder normal ICE procedures, the alien who is eligible for consideration for release bears the burden of proof at . . . an individualized bond hearing").

Some courts have reached a different conclusion on this issue. The Ninth Circuit, for example, has held that due process requires the government to bear the burden of proof at a bond hearing and justify an alien's detention by clear and convincing evidence. *See Singh v. Holder*, 638 F.3d 1196, 1203-05 (9th Cir. 2011). *Singh* remains good law in the Ninth Circuit. *See Aleman Gonzalez v. Barr*, No. 18-16465, 2020 WL 1684034, at *16 (9th Cir. Apr. 7, 2020) (holding that *Jennings* did not invalidate the constitutional due process burden of proof holding in *Singh*). And the Ninth Circuit is not alone. *See Alfaro v. Barr*, 6:10-CV-06571 EAW, 2019 WL 8064614, at *4 (W.D.N.Y. Dec. 10, 2019) (requiring the government to bear the burden at detention hearings) (collecting cases); *Darko v. Sessions*, 342 F. Supp. 3d 429, 435 (S.D.N.Y. 2018) (same).

The Second Circuit has recently been presented with the issue of whether due process requires the government to bear the burden at bond hearings for aliens detained under Section 1226(a). *Velasco Lopez v. Decker* (19-2284) is on appeal from the Southern District of New York, where a judge there concluded that "[i]t is the

Government's burden to justify their detention of an immigration by clear and convincing evidence." *See* 19-cv-2912 (ALC), 2019 WL 2655806, at *3 (S.D.N.Y. May 15, 2019).

Nevertheless, in the absence of binding appellate authority, this Court concludes that neither Section 1226(a) nor the Due Process Clause requires that a clear and convincing evidence standard be placed on the government in bond hearings. *Compare Borbot*, 906 F.3d at 278-79 (detainee's bond hearing where he bore the burden of proof constituted "meaningful process"), *with Singh,* 638 F.3d at 1203 (due process requires the government to justify an alien's detention by clear and convincing evidence).

In sum, the Court will not require the Immigration Judge to have a second bond hearing because there is no constitutional defect in the one Lopez received. *See, e.g.*, *Hylton*, 2015 WL 3604328, at *7 (declining to "shift the burden of proof or remove the bond proceeding from the immigration court" because the petitioner neither "suffer[ed] a constitutional violation, nor proffered facts sufficient to demonstrate that an immigration judge would not weigh appropriately a developed record on the issue of the propriety of [his] release on bond"). Courts have recognized, however, an alien's "concern that, despite an initial bond hearing, detention under § 1226(a) might become unreasonably prolonged, whether by virtue of government delay or some other cause." *Borbot*, 906 F.3d at 280 (declining to decide "when, if ever, the Due Process Clause might entitle an alien detained under § 1226(a) to a new bond hearing in order to conclude that [the detainee's] due

14

process rights were not violated").  Here, the Court is unable "to identify a basis in the record to demonstrate that [Lopez's 15-months of detention represents] such a case."  *Id.*  The EOIR's two-time adjournment of Lopez's removal hearing did not create an unreasonable and substantial delay.  And it bears noting that some delay could be attributed to Lopez, who failed to serve his Application for Cancellation of Removal in a timely manner and requested two adjournments.  *See Fallatah v. Barr*, 19-CV-379, 2019 WL 2569592, at *4 (W.D.N.Y. June 21, 2019) (no due process violation in part where the detainee bore "at least some responsibility for the delay he [] suffered" because he and his attorney requested several extensions and because one adjournment was to accommodate a "newly raised" claim by the alien).  On this record, then, Lopez's detention has not been unconstitutionally prolonged.  *See id.* at *5, n.3 (recognizing the issue left open by *Borbot*—that a constitutional defect might require a second hearing with a different burden allocation—but finding no constitutional defect warranting a second hearing where the alien's detention had "not yet violated his due process rights"); *see also* Section II(b), *infra*.

Lopez's petition also fails to the extent he argues that the Immigration Judge violated his due process rights by failing to consider, overtly, his ability to pay bond and alternatives to detention.  The Immigration Judge's decision to deny release on bond because Lopez presented both a flight risk and a risk of danger "necessarily implie[d]" that no amount of bond was appropriate and that no alternatives could mitigate the risks he presented.  *See Slim v. Nielson*, No. 18-cv-02816-DMR, 2018 WL 4110551, at *5 (N.D. Cal. Aug. 29, 2018) (denying a Section 1226(a) detainee's

habeas petition and concluding that there was no due process violation in part where "the decision denying bond necessarily implie[d] that the IJ concluded that no amount of bond was appropriate").  In addition, to the extent Lopez challenges "the IJ's discretionary weighing of the evidence" at his bond hearing, this Court lacks jurisdiction to review that claim.  *Id.* at *6.

Lopez has the option to seek a subsequent bond hearing upon a showing that his circumstances have materially changed.  8 C.F.R. § 1003.19(e).  But his procedural due process challenge fails.

### b.  Lopez's detention comports with substantive due process.

Lopez argues that his continued detention violates substantive due process. He asks the Court to "conduct a hearing and issue a declaration that [his] ongoing detention violates the Due Process clause of the Fifth Amendment."  Dkt. 1, at 11 ¶ 2.  The Court denies this portion of Lopez's petition as well.

Substantive due process "prevents the government from engaging in conduct that 'shocks the conscience,' . . . or interferes with rights 'implicit in the concept of ordered liberty.'"  *United States v. Salerno*, 481 U.S. 739, 746 (1987) (internal citations omitted).  Conduct that "may be considered 'shocking' when it serves to deprive the life, liberty or property of a citizen may not be unconstitutional when directed at an alien."  *Doherty v. Thornburgh*, 943 F.2d 204, 209 (2d Cir. 1991) ("[A]n alien's "right to be at liberty during the course of deportation proceedings is circumscribed by considerations of the national interest.").

Lopez's detention since January 2019 "fails to demonstrate that his discretionary detention has become so unreasonably prolonged so as to render that confinement unconstitutional." *German B.A. v. Ahrendt*, No. 18-17579 (JMV), 2019 WL 3562091, at *3 (D.N.J. Aug. 6, 2019) (denying habeas petition where the alien was detained under Section 1226(a) for over 16 months). "Although there comes a time when the length of an alien's detention pending removal violates due process regardless of the procedural protections afforded, that time has not yet come here." *See Fallatah*, 2019 WL 2569592, at *3. In addition, Lopez "has not demonstrated the invidious purpose, bad faith or arbitrariness necessary to make out a denial of substantive due process." *Doherty*, 943 F.2d at 212. This is particularly so given the circumstances of his detention, including his coercion conviction (albeit on appeal) and alleged ties to MS-13. *See id.* at 211 (finding no "invidious purpose or bad faith motivating the denial of bail" where the detainee's military affiliation could "constitute a more general threat to national security"). Lopez's petition on this ground is denied.

## **<u>CONCLUSION</u>**

For the foregoing reasons, the relief requested in Lopez's petition for a writ of habeas corpus is denied.  His petition is dismissed without prejudice to the filing of any new petition in the future based on new and different facts, consistent with the analysis above.  The Clerk of Court is directed to close this case.

SO ORDERED.

Dated:          April 29, 2020
                    Buffalo, New York


                                    s/John L. Sinatra, Jr.
                                    JOHN L. SINATRA, JR.
                                    UNITED STATES DISTRICT JUDGE